ARTHUR FINK, Plaintiff-Appellant, *v.* KASLER CORPORATION, a California corporation, Defendant and Third-Party Plaintiff-Appellee, *v.* HACHIRO FUNAYAMA, Third-Party Defendant and Fourth-Party Plaintiff-Appellee, *v.* JOHN FINK, Fourth-Party Defendant-Appellant

NO. 8042

(CIVIL NO. H80-1010)

AUGUST 25, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This is a negligence action arising from a two-car accident. Plaintiff-appellant Arthur Fink (A. Fink) and fourth-party defendant-appellant John Fink (J. Fink) appeal from a judgment dismissing the complaint and finding J. Fink liable for the damages to third-party defendant-appellee Hachiro Funayama (Funayama).

Defendant-third party plaintiff-appellee Kasler Corporation
(Kasler) was deemed free of liability.

The only issue we need to decide on appeal is whether, as a road
construction contractor for the State of Hawaii (State), Kasler owed
to the traveling public a legal duty to reasonably maintain an
intersection stop sign. Our answer is yes, and we reverse the judg-
ment of the court below.

The facts are not in dispute. On May 31, 1978, at about 7:30
p.m., J. Fink was driving a car in the Diamond Head (easterly)
direction on Koapaka Street in Honolulu, Hawaii. The car was
owned by his father, A. Fink. As J. Fink approached the Koapaka
Street-Paiea Street intersection, he looked for a stop sign. Not seeing
any, he proceeded into the intersection where his car was struck by a
car driven by Funayama. Funayama was driving in a mauka (toward
the mountain) direction on Paiea Street, which was a through street.

J. Fink was unfamiliar with the area. But, Funayama, who
worked near the area, was familiar with the intersection and knew
there was a stop sign for Koapaka traffic. When the two went to look
for the stop sign, they found it lying face down on the ground.

At the time of the accident, the vicinity of the intersection area
was under construction in connection with the airport area viaducts.
As the State's construction contractor, Kasler had removed the per-
manent stop signs at the Koapaka-Paiea intersection and replaced
them with temporary stop signs. In its contract with the State, how-
ever, Kasler had agreed to properly post and maintain all road signs.

On March 5, 1980, A. Fink filed a complaint seeking recovery of
damages to his car from Kasler. Kasler brought in Funayama as a
third-party defendant. J. Fink was stipulated into the case as a
fourth-party defendant.

On June 6, 1980, a bench trial was had. After a pre-trial con-
ference and before hearing any testimony, the court ruled that as a
matter of law Kasler owed no legal duty to J. Fink to maintain the
intersection stop sign. At the conclusion of the case, the court held
further that Kasler owed no such duty to Funayama. Judgment
against both Finks followed.

The court reasoned that the State had no duty to erect the stop
sign at the intersection. Therefore, the State had no duty to J. Fink to
maintain the sign. Kasler had a contractual duty to the State to
maintain the sign. Since the State had no such duty to J. Fink,

however, Kasler's duty to the State did not extend to him. We disagree with the court's reasoning.

The State had exercised its discretion to erect a stop sign at the particular intersection. Thus, this case does not require us to make any determination as to the State's duty to erect the sign.

Because it had erected a stop sign, the State had a duty to properly maintain the sign for the safety of the traveling public who has the right to rely on its continued presence. *Firkus v. Rombalski*, 25 Wis.2d 352, 130 N.W.2d 835 (1964). In *Smith v. Godin*, 61 Ill. App.3d 480, 378 N.E.2d 218 (1978), the court stated:

> The case law is plain that once having elected to erect devices to guide, direct or illuminate traffic, a city then has a duty to maintain those devices in a condition conducive to the safe flow of traffic.

378 N.E.2d at 219. *See also Cangiamilla v. Brindell-Bruno, Inc.*, 210 So.2d 534 (La. Ct. App. 1968); *Wagshal v. District of Columbia*, 216 A.2d 172 (D.C. 1966); *Dudum v. City of San Mateo*, 167 Cal. App.2d 593, 334 P.2d 968 (1959). We note that our supreme court has recently stressed the general principle that the State has the duty to maintain its highways in a reasonably safe condition. *Lagua v. State*, 65 Haw. 211, 649 P.2d 1135 (1982).

Having found that the State had a duty to maintain the stop sign, it follows that Kasler, which contractually undertook to perform the State's duty, likewise owed a duty to the traveling public. A breach of such duty would render Kasler liable for negligence. This holding is supported by Restatement (Second) of Torts § 324A (1965) which reads as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

In *Weber v. Towner County*, 565 F.2d 1001 (8th Cir. 1977), Gerard

Township, North Dakota, had the duty of maintaining and repairing its roads. Not having any equipment, the township had Towner County do its road repairs. In an action to recover damages for personal injuries sustained when a vehicle ran into a washout on a township road, the court cited Restatement § 324A and stated at page 1009:

> It is a basic tenet of tort law that an actor, who may or may not have a duty to act, must, if he acts at all, exercise reasonable care to make his acts safe for others.

*See also David v. Broadway Maintenance Corp.,* 451 F.Supp. 877 (E.D. Pa. 1978).

We do not slight the trial court's theory of negligence that when the stop sign was down the intersection became an uncontrolled intersection, and Hawaii Revised Statutes (HRS) § 291C-61(a) (1976)[1] required J. Fink to yield the right of way to Funayama. However, the court should have considered and applied other relevant theories of negligence sought to be advanced at trial.

A basic tort principle is that breach of a legal duty is an essential element of any cause of action based on negligence. *David v. Broadway Maintenance Corp., supra. See also Carreira v. Territory,* 40 Haw. 513 (1954). When it ruled at the inception of the trial that Kasler owed no duty to J. Fink, the court effectively barred the Finks from presenting any evidence of Kasler's negligence. Had such evidence been presented, the court may have concluded that but for a breach of duty by Kasler, J. Fink would have stopped at the intersection and that based on all of the evidence Kasler was solely or partly responsible for the accident.

Reversed and remanded for a new trial.

*Dale W. Lee (James N.H. Yee* with him on opening brief; *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel) for plaintiff-appellant Arthur Fink and fourth-party defendant-appellant John Fink.

---

[1] HRS § 291C-61 (1976) reads as follows:

(a) When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

(b) The right-of-way rule declared in subsection (a) is modified at through highways and otherwise as stated in this chapter.

*Mal Gillin* for defendant and third-party plaintiff-appellee Kasler Corporation.

*Carleton B. Reid (Ashley K. Fenton* with him on answering brief; *Davis, Playdon & Gerson,* of counsel) for third-party defendant and fourth-party plaintiff-appellee.